OPPENHEIMER et al. v. IRVIN et al. (No. 365/65.)

(Supreme Court, Appellate Division, Third Department. January 6, 1915.)

1. PRINCIPAL AND AGENT (§ 104*)—IMPLIED AUTHORITY OF AGENT—CUSTOM.
   An agent to sell corporate stock has no implied authority to make any warranty, unless it is customary in the sale of stock for agents so to do.
   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 186–190, 193–195, 197–199, 200; Dec. Dig. § 104.*]

2. PRINCIPAL AND AGENT (§ 120*)—EVIDENCE OF AUTHORITY.
   Where, in an action on a contract of warranty made by the agent of the seller, there was no proof of express authority of the agent to make the contract, the seller, to defeat a recovery on the theory of implied authority, could show that there was no custom for agents to make contracts of warranty.
   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 297; Dec. Dig. § 120.*]

3. PRINCIPAL AND AGENT (§ 166*)—AUTHORITY OF AGENT—RATIFICATION.
   A principal does not ratify unauthorized acts of his agent, unless he has full knowledge of the facts.
   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 455; Dec. Dig. § 166.*]

Appeal from Trial Term, Ulster County.

Action by Seligman Oppenheimer and others against Richard Irvin and another. From a judgment for plaintiffs, and from an order denying a new trial, defendants appeal. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, LYON, HOW-ARD, and WOODWARD, JJ.

Lord, Day & Lord, of New York City (Allan B. A. Bradley and Henry B. Potter, both of New York City, of counsel), for appellants.

Brinnier & Canfield, of Kingston (William D. Brinnier, of Kingston, of counsel), for respondents.

HOWARD, J. The plaintiffs are jewelers, and reside in Kingston. The defendants are bankers and brokers, with offices in New York. One William J. Reineke, an agent of the defendant, visited the store of the plaintiffs in Kingston and solicited one of the plaintiffs to purchase from the defendant 100 shares of preferred stock of the United States Motors Company. After some conversation, one of the plaintiffs made an order in his own handwriting, in the name of the plaintiffs' firm, for 100 shares of this stock at $39 a share, and sent it to the defendants. This stock was subsequently delivered by the defend-

---

ants and paid for by the plaintiffs. Subsequently the stock declined greatly in value, and the plaintiffs, claiming that Reineke had warranted on behalf of the defendants to take back the stock and refund the purchase price in case it should shrink in value, made a demand on the defendants for a fulfillment of this contract of warranty. The defendants disclaimed that there was any warranty, and refused to take back the stock or return the money. This action is on the alleged breach of the contract of warranty.

There was a dispute of fact as to whether there was any warranty. Two of the plaintiffs and their brother-in-law—three witnesses in all —swear to the conversation out of which the warranty is said to spring. Reineke, the agent, positively denies the alleged warranty; but the jury have decided in favor of the plaintiffs, and there is no reason to disturb their determination of this question of fact.

[1] Assuming, then, that the agent did say, in words or substance, that the defendants would take the stock back and refund the money in case the stock should decline in value, and that the defendants would guarantee that the plaintiffs should not lose anything—how does this affect the defendants? There was absolutely no proof that the agent was authorized by the defendants to make any such warranty; the positive evidence of the agent and of one of the defendants being that the agent had no such authority. Therefore, unless the authority of the agent can be implied, what he said upon the subject of guaranty is wholly inconsequential. Unless it be proven that it is the custom, in the sale of goods similar to those in question, for the agent to warrant them, no authority is implied. In Cafre v. Lockwood, 22 App. Div. 11, 47 N. Y. Supp. 916, the rule was declared to be that:

"Where a contract for sale is made through an agent of the seller, there is no implied authority on the part of the agent to warrant the quality of the goods, unless it shall be made to appear that it was the usual custom in sales of goods of that kind for an agent to warrant them."

In Wait v. Borne, 123 N. Y. 592, 25 N. E. 1053, the rule was again stated thus:

"It must be usual for the agent to have power to warrant in order to carry out the object and to sell the article confided to him for sale before the law will imply such power."

Smith v. Tracey, 36 N. Y. 79, also enunciates the same doctrine.

There was no such proof in this case—no proof that it is customary in the sale of stocks for agents to warrant that they will not decline in value, and that, if they do, the broker will take them back and refund the money. Therefore the case is absolutely barren of evidence of the agent's authority to make the alleged contract of warranty sued upon. There was no implied authority to warrant, and therefore no authority at all. Hence there was no such contract as the one sued upon, and therefore no cause of action, and the complaint should have been dismissed.

[2] There having been no proof presented by the plaintiffs of express authority on the part of the agent to make the alleged contract of warranty, a nonsuit could only have been denied on the theory that

there was an implied authority. It was therefore the right of the defendants to offer evidence tending to show that there was no implied authority. As has been seen, there could only be an implied authority here, if it be the custom for agents to warrant the value of stocks when he makes a sale of such securities. The defendants attempted to prove that there is no such custom. The trial court rejected this evidence. This was error. The learned trial court, in ruling upon this question, stated that the burden was not upon the defendants to make such proof. But in view of the only possible theory on which the denial of the nonsuit could have been based, namely, that the agent had implied authority to warrant, the duty was on the defendants to offer proof that there was no implied authority. The trial court refused to let the defendants do so, and this was error.

[3] There is no question of ratification here. There can be no ratification by the principal of the acts of the agent, unless the principal has full knowledge of the facts. In this case the defendants had absolutely no knowledge that the agent had given a warranty, such as is alleged in the complaint, or any warranty whatever.

For these reasons, the judgment and order should be reversed, and a new trial granted. All concur.